Good morning, Your Honors. Jean-Claude Buff of the Law Offices of A. Charles Delario, representing the plaintiffs and appellants, Clifford and Lauren Wales Chandler. Speak up, would you, please? Certainly, Your Honor. I guess I ought to begin by addressing the Rule 54 issue, which the Court has raised. As Your Honors know, surely, once a defendant has filed a response of pleading, you can't dismiss them simply as a matter of course. We have been trying to dismiss these last two defendants since May, first by negotiating a disposition, and when that broke down, moving to dismiss in front of Judge Walker. Judge Walker's calendar is a little backed up, and our motion to dismiss got continued. But it's on file, and it's scheduled to be heard next month. Next month? Correct. Well, Your Honor, I know that under cases like TCI Group Life Insurance Plan, which was issued by a panel two years ago that Judge Tshishima was on, the Court has can – these Rule 54 issues can be cured, essentially. Yes, but you haven't cured it. We haven't cured it. We're hoping that we can have it cured, certainly by the time the Court is ready to issue a decision, and if – Well, if we have no jurisdiction, we can issue a decision today. Then – I mean, I can't do any more than ask the Court – I'm thinking perhaps a deferral of admission might be one mechanism. Well, what that suggests is that your appeal is premature. Why don't you wait until, you know, final judgment before you file a notice of appeal? Well, Your Honor, my firm wasn't involved in the case back then, but I think the answer is – I think counsel at the time did not realize this was a Rule 54 issue. We realized it when we got in. We were trying to get these guys dismissed. If – if the Court were to dismiss the appeal, it would be refiled in a month after the remaining defendants are dismissed, and we would wind up submitting the same briefs to this panel or presumably another panel. Well, maybe, but if we don't have jurisdiction, we don't have jurisdiction. You have not gotten rid of all parties and all claims. That's true, Your Honor. And I can't do anything more than ask the Court to defer submission until the jurisdictional defect is cured. Well, why don't you go ahead and, you know, argue what you have to say on the merits of the appeal, all right? Thank you, Your Honor. I'd like to begin first by addressing the breach of fiduciary duty issue. And I'd like to do that by supposing for the Court a hypothetical. That's a breach by a – by which defendant? By Mr. Van Dyck, who served as Mr. Chandler's stockbroker several years earlier. And the hypothetical is this. Opposing counsel calls me up – not opposing counsel, prospective replacement opposing counsel calls me up and says, I'd like to take over this case against your client, but I don't want to do it unless I know that your client is worth it. And if I don't take over this case, then there won't be any plaintiff's lawyers and your client gets off the hook. So with that background, then, please tell me, what's your client worth anyway? Now, if I were to disclose the amount of my client's holdings at that point, I think that would be a clear breach of the duty of confidentiality. It would probably also be a breach of the duty of loyalty, but in any event, I'd probably get this point. Sotomayor, are you putting Van Dyck, Mr. Van Dyck, in that posture? I'm sorry, I didn't mean to. I am, Your Honor. I think Van Dyck was approached – Van Dyck, who served as Mr. Chandler's stockbroker, was approached by a lawyer with the question of, should I sue your friend or should I sue your former client, is he worth it? And it's undisputed that in response to that question, he disclosed not only the general amount that he believed, based on his experience, that Mr. Chandler was trading, and also what types of trades he engaged in. What exactly did he disclose? Well, the most precise words are found in tab 8, which I believe is in tab 7 of the Constitution, Volume 2, and this is Mr. Stonich's report to the Board about his conversation. And what he said is – he said, I believe that Mr. Chandler is probably worth, I think it was six figures, based on – based on what he used to trade. And also, he said – talked about what types of trades that he engaged in, and they were generally sort of high-risk trades. Certainly, within an order of magnitude, basically, he disclosed what he thought Mr. Chandler's assets were, what he was – the amount that he was trading. And based on this information, with other information, that is what induced Mr. Stonich to take over the case. Do you think there's a specificity about that, that is cognate with anything you've said about your hypothetical lawyer disclosing information? Well, he's been heavily invested in various markets for the past 20 years, high-risk, probably in the seven-figure range. Is that a – I see Your Honor's point, and I think that the best way of responding to it is there's no test for confidentiality that I know of that hinges on the specificity of the information. Certainly, in the context of a lawyer client confidentiality, the question is whether this information was given to the lawyer with the expectation that it would be kept confidential in order to enable the lawyer to do the lawyer's job. I think that that test is satisfied here. Certainly, a jury – a properly instructed jury could conclude that there was a breach of the duty of confidentiality. Is it – which – which aspect of the information do you find troubling? The characterization that it was high-risk? That, not so much, Your Honor. I'm particularly focusing on the general amount involved. I mean, there are people out there, you know – and, in fact, the Fair Credit Reporting Act is based in part on the notion that there are a lot of people out there who don't like others to know what they're worth. It gives rise to all sorts of – all sorts of risk. And I think that's exactly why, you know, we have a duty of confidentiality between a stockbroker and his or her client. Is there – what about the other claims? Certainly, Your Honor. I do not intend to say anything about the invasion of privacy claim. I think that's covered adequately in the briefs. I'd like to turn, if I could, to the – to the FCRA claims. And what I'd like to do is first spend just a minute talking about the findings that I think a jury could arrive at. And then I'd like to look at the evidence that we have in the record, based on what's in the record, and then – and then examine the legal significance of those findings under various possible tests. First, we have to look at Mr. Pruitt's state of mind when he received the instruction that he received and when he obtained the Chandler's credit reports. The undisputed evidence is that he – he obtained the credit reports on behalf of Mr. Stonich, and as he so. No one has ever suggested that he was doing this for his own personal reasons or for some other client. Well, when you say – now, you just referred vaguely to the instructions he received. What instruction exactly was given by Stonich or anybody else? He was told to locate the Chandler's assets. He was not told to access the credit report, right? I do not believe he was. There's no evidence in the record that he was. I think a jury could infer that that message was between the lines. But more importantly, that doesn't really – that's not the test. There isn't the basis for the jury's drawing that inference. Well, I think primarily – I mean, certainly Mr. Pruitt testified that he thought that there was an enforceable judgment and therefore a permissible reason to obtain a credit report. And there are things that Mr. Stonich said that a jury could conclude led Mr. Pruitt reasonably to that conclusion, which is to describe things in terms of a claim. And more importantly, Mr. Stonich was very careful to say, I would also like you to And he said that in a way that made it clear that he knew that that could be done only for certain purposes. And he said, I have one of these purposes. I think that it's okay for you to obtain this information about Ms. Chandler because you've just told me that you think that he might be transferring assets. So in the end, we have someone saying, I'm – the thing that I am asking you to do is permitted – is something that you were permitted to do. That's what was very clearly written between the lines. But more importantly, there is not a test that I'm aware of for actual authority that turns exclusively on the language that the principal uses when he is instructing – he or she is instructing the agent. The test – the test that this Court has applied, certainly in the labor context, is that if the agent believes that he is – Your contention is Pruitt was whose agent? Ultimately, AYS was the principal. Stonich is sort of sandwiched in between there as AYS's agent as well. But the communications were all indicated very plainly that Stonich was retaining – So the theory has to be that if it's AYS, some kind of apparent agency. Is that right? Because there was certainly never any – well, you think the evidence supports finding that something other than apparent agency? Well, certainly. AYS, I mean. Certainly. AYS had retained Stonich at this point to prosecute this lawsuit, and so that means that Mr. Stonich had actual authority to do whatever was appropriate in the course of prosecuting the suit. He, in turn, as part of discharging those duties, retained Mr. Pruitt. So you have two levels of authority, but I think there's actual authority at each level, not just apparent authority. Actual authority is anything – it's not just the explicit instructions of the principal or the sub-principal, so to speak, but anything that reasonably follows from that. So I think that – so Mr. Stonich sort of drops out of the picture. He's just a link in the chain, but there's actual authority on both sides of him. And under the test that this Court has adopted, his precise word – neither AYS's precise words to Mr. Stonich nor Mr. Stonich's precise words to Mr. Pruitt control the question of whether a jury could find that there was actual authority. As long as Mr. Pruitt thought that he was working on behalf of AYS, thought that he was doing something that would benefit AYS, something that he had been instructed to do, then a jury can certainly find that there's liability. Did you say that a jury, you say, could find actual authority? Oh, absolutely, Your Honor. Under the – Actual authority as an agent of AYS? Yes. Actual authority is not just what the principal tells you to do. It's everything that you – that is appropriate to do along the way. Well, but is it appropriate to do an illegal act? That was certainly – this Court's holding in cases such as Doggera and the NLRB case that I cite in the brief. In all of those cases, the principal attempted to distance itself from the agent's act by saying not only did we – did we tell him not to do this. It's actually – it's improper. And the Court found – and those cases in turn were based on – this Court cited an old California case – excuse me – involving a – somebody had purposefully driven his truck into somebody else. And the question was whether his employer was on the hook. And it's an illegal act, obviously, but the principal was on the hook. By the way, in determining the agency relationship, is this a matter of a California law or something like Federal common law? The latter, Your Honor. I mean, in a sense, it doesn't really matter because the Federal courts and California courts are both in accord on this point, and they both follow the restatement. So we have – we have the very broad test that this Court has articulated for actual authority. Did the agent think that he was doing something for the principal's benefit? That's all it takes. And on this record, it's undisputed that that's what Mr. Pruitt was doing. And that is true regardless of Mr. Pruitt – of any words of instruction and regardless of Mr. Stonish's state of mind. Now, there's a slightly narrower test that's addressed that – it's the restatement test, and under that test, Mr. Pruitt's state of mind comes into play. He is acting with actual authority only if his interpretation of his instructions was reasonable. Under the Ninth Circuit test, under the broader test, even if his interpretation of his instructions is unreasonable, there's still vicarious liability. So then – and then finally, the narrowest test of all is the test for direct liability for Mr. Stonish under – under the FCRA. If he – and this is the only one that turns on his state of mind – if he deliberately set out to obtain a credit report by – by deliberately suggesting to Mr. Pruitt that that's what he wanted, or if he was negligent in his instruction of Mr. Pruitt, then – then he's directly liable, not vicariously liable, but directly liable under the FCRA. And I think that a jury could – could arrive at that conclusion on this record as well. Certainly, that was – that would be consistent with Mr. Pruitt's testimony. Do you want to reserve any time for rebuttal? I will, Your Honor. I will take the rest of it. Thank you. Is the Court? My name is Carol Healy, and I represent the appellees, as you so, Nonprofit Corporation, its Executive Director, Lawrence Vaughn, and its former Chairman of the Board, Thomas Van Dyck. The context in which this case arises is important. Is the other counsel going to argue, too? Yes, Your Honors. We're taking – we've divided it up roughly equally. I'm taking 10 minutes, and my co-defense counsel will take the rest. Go ahead. So I'm going to try to be brief. Why didn't some of you call to our attention that this case – that we didn't have jurisdiction? Everybody just kind of floating along. I remember when we got the notice from Your Honors about a week ago that this would be an issue.  Well, we'd like to proceed with the argument in any event, because it's – the case against the investigators is – its status is not important to us. So. Is it your view that this Court has jurisdiction? Under the law, I think it's somewhat ambiguous whether, when you have a complete dismissal of the two parties, as you so – and John Stonehedge, that are the main focus of the plaintiff's case, whether it's – the dismissal is a complete action as to them. Now, reading the statute, I agree Your Honors is probably correct that jurisdiction should – will await the complete dismissal of the entire action. If it were possible to stipulate to jurisdiction, we'd be ready to proceed in any event. You can't do that. And I appreciate that, Judge Fletcher. Yeah. You could perhaps stipulate to jurisdiction before an arbitrator. Your Honors are – Not in this room, right? Very well taken, Your Honor. If I could – I appreciate your allowing us to argue our case anyway. Holding a non-profit foundation in the business of supporting environmental causes liable for an act that's done by a twice-removed independent contractor gives no protection to the public. It does not affect what credit reporting agencies do or what users of credit reports do, since as you so cannot change its ways and cannot, as the statute says, establish reasonable procedures concerning access to credit information, because as you so never had access to credit information and never had any ability to control the activities of licensed state private investigators in the operation of their business. No case has yet decided the issues before you today. No case sits as precedent who holds a party outside of the scope of the business enterprise, and we're talking here about credit reporting, the business and credit reporting. Under that theory, what's the business enterprise here? Your Honor, the point is that as you so is not in the business of getting credit reports. It doesn't take MasterCard. It doesn't sell products. It's completely outside of the scope of anyone who would expect to be in the business. You're not answering my question. You're not answering my question. I said, what is, then, the business enterprise in this case? In this case, the business that the investigator is in is in the business of investigation. The ---- You're talking about Stonehedge? No. I'm talking about Alan Pruitt, who was the guy who went and, without instruction, in fact, completely devoid of any instruction ---- I want to point out that there was a specific checklist that the investigator had. So under your theory, the act would only reach people like Pruitt and his employees. Is that right? No. That's not the point that I was making, Your Honor, but I'll try to express it again. The purpose of the Fair Credit Reporting Act was to relate people who were in the business, the credit reporting agencies, and all those people who used that information. All of the cases to date have only applied vicarious liability to people who were subscribers or users of credit information. They only ---- Do you think under the plaintiff's theory of the case that, as you saw, was a user or potential user of the information? It was not, Your Honor. In order to ---- the plaintiff has alleged in their pleading that they were a user, but they have not produced any proof in their summary judgment opposition. They have not come up with any evidence that, as you saw, ever ordered or requested a credit report, that as you saw, ever hired ---- No. Their theory is that they ordered it through an agent, but ordering it directly is different from being a user or potential user. I mean, they're the user because they want to know, you know, what the plaintiff's assets are, right? Your Honor, that's the precise point here. The plaintiff is trying to stretch a request for asset information, finding out if a person owns things, into a specific request for a credit report, which is a very specific, intense statute that prohibits requesting a credit report. Now, you're shifting your argument. Now, you were saying earlier that, as you saw, is not a user. As you saw, is not a user of credit reports. It doesn't have any accounts. In this case, the allegation is that they are, that they ordered it through their agent. But even, first of all, the plaintiff assumes throughout his argument that John Stonich is an agent. Plaintiff has not proved that John Stonich is an agent of as you saw. John Stonich is an independent contractor. He's an attorney, and there's a plethora of law that says that attorneys are independent contractors. Secondly, this attorney goes out and hires an investigator. The corporation had a meeting wherein it specifically authorized, very specifically, an asset check. Not a credit report, but an asset check only. If you're going to extend this liability, this statute, to this degree where it has never been extended before, it's going to have more sweeping impact on the general public than was ever intended by the Fair Credit Reporting Act. Is Mr. Stonich a user in your view? Mr. Stonich is not a user either, because he has not used a credit report. In fact, Mr. Stonich, his only crime is that inadvertently and innocently he got a credit report without requesting one. It was just sent to him in the mail. You know, Alan Pruitt never even told him he got a credit report. It wasn't just sent to him in the mail. It was, Your Honor. He had some relationship with the mailer, did he not? He employed Mr. Pruitt. He did. He employed Mr. Pruitt, but he never employed him to get a credit report. Now, Mr. Stonich kept those credit reports for a year. He didn't even know he had them, Your Honor, at first. He had talked with John Portek. You have to remember that we have another entity here that's not been discussed besides Alan Pruitt. Alan Pruitt was a licensed investigator with no access to credit reports, and Alan Pruitt is the man that, as you saw through John Stonich, agreed to pay to get an asset report. Now, Alan Pruitt went into this other man's computer system to extract a credit report, which Alan Pruitt had no authority to get. And it's only John Portek that this entire statutory scheme was intended to reach. It was intended to reach the man who has the capacity to stop this kind of behavior. As you saw, has no capacity to control this. Okay. If I can continue. The investigators are not in this case, neither Alan Pruitt nor John Portek. They're not here. Why aren't they here? That's a good question, Your Honor. This is the attempt by plaintiff to broaden the scope of liability infelently to eventually get a big, nice, deep pocket to pay. Now, Alan Pruitt wasn't Sears or Federated Department Stores. He wasn't Equifax. He was just a licensed state private investigator. And John Stonich had no reason to believe that he would try to secure credit reports. Was it inconsistent with, as you know, retainer of Mr. Stonich for Mr. Stonich to retain Mr. Pruitt? No, Your Honor. Mr. Stonich specifically came to the board of As You So and said, I would like to get an asset check to determine if Mr. Chandler and Mrs. Chandler have the assets to support the judgment for this, which might be in the several millions. And that was approved. An asset check was approved. Now, As You So doesn't know what's legal and what's not legal, and John Stonich isn't in the business of getting investigation and checks. He hires somebody who's in the business of investigation to do the right thing. To hold these people liable is not consistent with any of the law that has so far been developed. You, Your Honors, will be making new law should you grant the plaintiff's request to reverse the lower court on this issue. Now you've used up half the time that your side has. I will pass, then, Your Honor, to my other counsel. Thank you. Basil Plasteris for Respondent John Stonich. May it please the Court. I believe that this case can be decided, aside from the jurisdictional issues, which I think the Court has already addressed. I think this case can be decided on the statutory interpretation. The FCRA was specifically and expressly enacted to regulate the consumer reporting industry. The primary responsibility is expressly stated to be with the consumer reporting agencies. This is 15 U.S.C. 1681-84, and, of course, it's confirmed in the Kodrick and many other decisions as well. The statement of purpose is to require consumer reporting agencies to adopt reasonable procedures to regulate the collection and disbursement of credit information, and that's 1681. Now, the CRA refers to a variety of terms within the body, and, unfortunately, it does not define all of them. In fact, it doesn't define most of them. But it does refer to credit reporting agencies' users who are presumably regular industry users of credit reports, the end users and subscribers and prospective users and third party. But it does not impose liability on all of these entities. In fact, I'm assuming that the primary allegation that the appellant is making is under the negligence section, which is 617 or 1681-0. Now, that provides that any person who is negligent in failing to comply with any requirement imposed under this title. So the very next thing, the appellant is focusing on the use of any person. I think that that's a very limited view. One must focus upon the phrase, failing to comply with any requirement imposed under this act. That phrase just begs the question of what is prohibited and who is prohibited. And if one looks at the specific enforcement provisions of the FCRA, we see that those requirements are not imposed upon any person. They are imposed upon consumer reporting agencies, 1681-B. And this is one of the primary enforcement provisions. Any consumer reporting agency may furnish a consumer report under the following circumstances and no other. It doesn't make reference to users. It prohibits credit reporting agencies from disseminating this information. 1681-C refers to no consumer reporting agency may make any consumer report concerning any of the following items. Again, regulating CRAs. There is a provision under 1681-D for investigative consumer reports, which merely uses the phrase a person may not procure. But, of course, this is not an investigative consumer report case. That requires interviews with neighbors and friends. It's a whole different procedure and is wholly inapplicable here. Compliance procedures under 1681-E. Every consumer reporting agency shall maintain reasonable procedures to limit the disbursement, the furnishing of credit reports. 1681-M. On and on we see that those other provisions referred to in the phrase, in failing to comply with any requirement, imposes the requirements not on the general public, but on the consumer reporting agencies and, in rare instances, users. In fact, 615 or 1681-M is the only section that refers, that enforces itself against users. And it says there that the duties of users, it's described as duties of users taking adverse action on the basis of information contained in credit reports. Now, that's not the facts here. This refers to lenders who either deny credit or increase the interest rate on the basis of the credit reports. Nothing was done in this case on the basis of any credit report. Mr. Stonach never asked for it, didn't know he had it. He was told by someone with higher, more experience that it wasn't a credit report, that, in fact, it was just a credit header. And so he should be forgiven for relying upon that person's information. After all, that person is the expert. Mr. Stonach had never seen a credit report before. And these credit reports were delivered to him via mail in a large stack of reports, all of them computer-generated, all looking very much the same, and they composed a total on two people, two credit reports, a total of three pages. Not significant at all. And Mr. Stonach was previously told by Mr. Pruitt, I'm going to send you a bunch of reports, but unfortunately there's nothing in there. I'm sorry I couldn't be of help to you. Well, understandably, under the circumstances and recognizing that Mr. Stonach is just investigating the case and operating on a contingency basis, he's not going to take a lot of time to read reports when the generator of those reports has told him they're not going to be of any use to him. So it's perfectly understandable why he didn't know he had the reports. What does that go to? That goes to even if there were some negligence requirement imposed upon Mr. Stonach, and even given the appellant's argument of ratification, Mr. Stonach has to know that there are credit reports before he can ratify them. And he did not know. He had to know or he should have known. Well, it would seem to me under these circumstances that ratification where he hasn't requested them, where he doesn't know they've been delivered, where he hasn't even been billed for them, where we see that Mr. In the bill that he received from Mr. Pruitt, it listed a number of reports that had been produced, and then the charge, I believe it was $500. There was no reference in the bill to credit reports. Well, isn't your argument one that goes to the jury as to whether this is a situation in which the ratification could be found? No. I believe that the Berman v. Parco case addresses that. All of the evidence supports a complete lack of knowledge by Mr. Stonach. This is Mr. Portek's testimony, Mr. Stonach's testimony, Mr. Pruitt's testimony, all of the documents, the billing statement, the confirming letter addressed from Pruitt, from Mr. Stonach to Pruitt, all of them confirm that there was never a request for a credit report and never was he informed that he had one. In fact, Mr. Portek informed him to the contrary. Now, with regards, the Berman v. Parco case says that it's not enough for a plaintiff to hope and pray that a jury will disbelieve the facts in the case. If all of the facts support one finding only, that is the end of the case. The jury isn't entitled to speculate any more than a particular witness would be entitled to speculate. And so we see that all of the evidence supports the defendants, the Respondents in this case. Looking at the case law itself, counsel, the appellant has gone very far afield in this case to find cases under agency theory. This is not an agency case. An agent is an insurance broker or a real estate broker who is hired to deal and negotiate with some third party. Mr. Pruitt was not hired as a representative. He was hired as an investigator. He was not hired to negotiate anything with any third party. And therefore, the agency rules don't generally apply. And as I said, they're very far afield. Some of the NRA cases and the FHA cases, if we look right at the case law pertaining to FCRA, we see that the courts have ruled that the CRAs and individuals who knowingly violate the law, that's Kodrick. Well, there's no claim here that Mr. Stonach, there's no evidence here that Mr. Stonach knowingly violated any law. Then we see CRAs and certain users are liable under the act. That's the Diddy case. Those who have denied credit or imposed higher charges upon consumers, the Digiani case, and those who in the ordinary course of business request and receive credit reports, that is the Northrop case, those cases apply the FCRA as it was intended by Congress to the industry itself. And Mr. Stonach is not in any way, nor has he ever been involved in the credit industry. Vicarious liability should attach only where there is some misconduct on the part of the accused. And here we see that there's no evidence of any misconduct by AYS or by Mr. Stonach. And looking at the support for this proposition is the Amora, the Adams, and the Berger cases. Even assuming that Congress intended to regulate a private solo practitioner attorney such as John Stonach in his only foray into the credit industry, and it wasn't an intentional foray, it was strictly Mr. Pruitt's decision, the FCRA should not be enforced against him. The key point is that attorneys should be allowed to investigate their cases before filing to determine whether they are collectible and whether they have merit. Kennedy. Why should there be an ingredient of misconduct on the part of Mr. Stonach or whoever the principal is? The FCRA refers to negligence and willful. The cases refer to manifest authority. Some of the labor cases are cases where the collective bargaining agreement says don't do this, but of course they've allowed the stewards or agents of the union to do it anyway. But in this case, there's an important public policy that ought to be enforced, and that's the policy that there ought not to be needless litigation. An attorney should be allowed to investigate a case to determine whether it's going to be collectible or whether it's going to be meritorious. And if it's not either, then the attorney's not going to prosecute it. This reduces the caseload upon the public. It reduces the fees upon the clients. It's to everybody's benefit. There is no benefit to finding, to penalizing John Stonach and AYS who have nothing to do with the statutory regulated parties. Well over your time. Thank you. Any rebuttal? I'd like to make four points very quickly. First, this is an agency case. Counsel himself used the words vicarious liability. That's what we've been talking about in this whole case. And there is no requirement that the principal engage in any wrongdoing. Then the whole you don't need vicarious liability if the principal engaged in wrongdoing. That's one of the fundamental rules of agency law. And also the whole idea that Stonach and or Pruitt were acting as independent contractors is not presented on this record. It's a disputed factual matter that the district court refused to address. It may be left for us if this Court chooses to remand. Number two, I'd like to get back to the idea of whether AYS specifically authorized the retention of Mr. Pruitt. What I neglected to point out to the Court was that AYS, actually the board of directors adopted a motion specifically authorizing the engagement of the private investigator. So if the Court is uncomfortable linking the chain of agency through Mr. Stonach, it doesn't need to. There's direct authority for the retention. Finally, if this Court finds that FCRA applies to persons other than those who maintain subscriptions with credit reporting agencies, it will not be making new law. Congress made that new law in 1996 when it amended the statute extensively. Among other things, Congress adopted what is now Section 1681bF, which provides a person shall not use or obtain a credit report for any purpose unless it's obtained for a purpose for which the report is authorized to be furnished and the purpose is certified in accordance with Section 1681e. So that's Section 1681b, which imposes liability on any person, and coupled with Section 1681n and 0, which provide the mechanisms for negligent and willful violation of the statute, it's clear that the statute now applies much more broadly than it did before 1996, and it now applies to people who are not users, as that term is defined in the statute. And for that reason, the Berman case that counsel cited is no longer good law. Berman arose under the pre-1996 version of the statute. The last thought with which I would like to leave the Court is that the idea that's should the burden fall. Should it fall on the principal for whose benefit the agent was working, or should it fall on some innocent bystander, like in this case Mr. and Ms. Chandler? Certainly, if anyone was in a position to prevent the unauthorized dissemination of their credit reports, it was AYS and Mr. Sconage. It wasn't them. And with that, I'm happy to submit the case, Your Honors. Okay. Thank you. We thank all counsel. This case is now submitted for decision. All right. The panel is going to take a brief recess before we return for the remainder of the calendar. All rise. Thank you.
judges: B Fletcher, Tashima, Pollak